**THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| CHANEL, INC., a New York Corporation, | ) ) ) | CASE NO. |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| DAWN WALKER d/b/a AMAZIN TRENDZ, | ) ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

## <u>COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF</u>

Plaintiff, Chanel, Inc., a New York corporation ("Chanel") hereby sues Defendant, Dawn Walker d/b/a Amazin Trendz, (the "Defendant"). Defendant is promoting, selling, offering for sale, and distributing goods using counterfeits and confusingly similar imitations of Plaintiff's trademarks within this district via, among other things, Defendant's Facebook page, which operates under the name "Amazin Trendz" (the "Social Media Account").  In support of its claims, Plaintiff alleges as follows:

**JURISDICTION AND VENUE**

1.      This is an action pursuant to 15 U.S.C. §§ 1114, 1116, 1121, 1125(a), and 1125(c). Accordingly, this Court has jurisdiction under 28 U.S.C. §§ 1331, 1332 and 1338.

2.      Venue is proper in this Court pursuant 28 U.S.C. § 1391 because a substantial portion of the alleged unlawful conduct occurred within the Northern District of Georgia ("District") and, upon information and belief, Defendant resides in this District, her principal place of business is in this District, and she conducts business within this District.

3.      Upon information and belief, personal jurisdiction exists over the Defendant for the reasons set forth in paragraph 2 above, and because the Defendant further avails herself of the privileges and protections of the laws of the State of Georgia, such that this Court's assertion of jurisdiction over the Defendant does not offend traditional notions of fair play and due process.

**THE PARTIES**

4.      Chanel is a corporation duly organized under the laws of the State of New York with its principal place of business in the United States located at Nine West 57th Street, New York, New York 10019.  Chanel is, in part, engaged in the business of manufacturing and distributing throughout the world, including within this District, high-quality products including handbags, earrings, necklaces, scarfs,

clothing, and other products under the world famous federally registered trademarks

⫸, Ⓒ, ⫸ and CHANEL (the "Chanel Marks").  Chanel is the owner of all registered and common law rights associated with the above-referenced marks as used in connection with the promotion, advertisement, and distribution of goods in the United States. True and correct copies of the Certificates of Registration for the Chanel Marks are attached hereto as Composite Exhibit "1."

5.     Defendant Dawn Walker is an individual d/b/a Amazin Trendz, who resides and/or conducts business within this District and, upon information and belief, conducts substantial business activities throughout the United States, including within this District, through at least, the knowing and intentional promotion, advertisement, distribution, offer for sale, and/or sale of counterfeit goods through live shopping events on her Social Media Account. Upon information and belief, Defendant uses additional aliases in the operation and/or promotion of her business, such as the "amazin_trendz" TikTok account, "amazintrendz" Instagram account, and amazintrendz@gmail.com e-mail address, as well as the Internet website operating under the domain name https://amazintrendz.com ("Subject Domain Name"). For true and correct examples of counterfeit products promoted and sold by Defendant through her Social Media Account and Instagram account see Composite Exhibit "2" attached hereto. For true and correct captures of Defendant's Social Media Account, TikTok account, and Instagram account see

Composite Exhibit "3" attached hereto.

6.     Further, Defendant promoted, advertised, distributed, offered for sale, and sold counterfeit Chanel products through live shopping events on the Facebook page operating under the name "24/7 Go Live." (the "Seller Platform"). Defendant directly infringed the Chanel Marks on the Seller Platform by personally promoting, advertising, offering for sale, and selling counterfeit Chanel-branded goods on the Seller Platform. For a true and correct example of a counterfeit product promoted by Defendant on the Seller Platform see Composite Exhibit "4" attached hereto.

7.     Defendant is directly engaged in unfair competition with Chanel through the advertisement, offering for sale, and sale of goods bearing counterfeits and infringements of Chanel's trademarks to consumers in the United States, including within this District. Defendant conducts her counterfeiting activities within this District and has purposefully directed some portion of her illegal activities towards consumers throughout the United States through the advertisement, offer to sell, sale, and shipment of counterfeit Chanel-branded goods throughout the United States.

8.     Defendant has registered and maintained the Social Media Account, TikTok account, Instagram account, and Subject Domain Name for the purpose, at least in part, of engaging in unlawful counterfeiting activities.

9.     Upon information and belief, Defendant will continue to engage in the offering for sale and sale of goods in this District using counterfeit and confusingly similar imitations of Chanel's trademarks unless permanently enjoined.

10.     Defendant's Social Media Account, TikTok account, Instagram account, Subject Domain Name, and any other domain names and/or aliases used in connection with the sale of counterfeit and infringing goods bearing or under Chanel's trademarks are essential components of Defendant's illegal activities and are some of the means by which Defendant furthers her counterfeiting and infringement scheme and causes harm to Chanel.

## SUBSTANCE OF THE ACTION

11.     This action arises out of Defendant's offer to sell, advertisement, distribution, and sale of products, including handbags, scarves, hats, clothing, and other products bearing a counterfeit of the iconic Chanel Marks detailed below in Paragraph 24. The Defendant's use of the Chanel Marks is not authorized by Chanel, and the Defendant's non-genuine goods are materially different from Chanel's genuine high-quality products including handbags, scarves, hats, and clothing.  By presenting non-genuine Chanel branded products in such an unauthorized manner, Defendant is earning a substantial profit and causing immediate and irreparable harm to Chanel as well as the consuming public.

12.     Defendant promotes and sells her counterfeit goods via her Social Media Account through, among other things, virtual, live shopping events. During these live-streamed videos, Defendant displays and describes the counterfeit goods to viewers, as well as assigns a code name and price to each good. Viewers are instructed to claim the goods by either (i) commenting the code name on the live video and/or (ii) private messaging the code name to Defendant via Messenger. After streaming these live videos, a recording of the video is posted to Defendant's Social Media Account, allowing consumers to watch the videos later and purchase any unclaimed counterfeit goods.

13.     Defendant uses her TikTok and Instagram accounts to promote the live videos on her Social Media Account in which the counterfeit goods are sold.

14.     Defendant also promotes and sells her counterfeit goods via her Instagram account by posting photos of counterfeit goods and directing consumers to direct message her for more information.

15.     Defendant, who is not and has never been an authorized distributor of Chanel's high-quality products, is offering for sale and selling, at least, counterfeit Chanel branded handbags, scarves, hats, and clothing.

16.      Through Defendant's live videos and Instagram posts, Defendant is displaying and selling its non-genuine Chanel branded products under the guise that those goods are authentic Chanel products.  As the Defendant's goods are non-

genuine products, Defendant is likely to confuse consumers in both the sale and post-sale setting who will believe they are purchasing, have purchased, or are viewing a genuine product approved and guaranteed by Chanel.

17.    Because Defendant is using the Chanel Marks to sell goods that are not identical to Chanel's authorized merchandise, and that, in fact, are materially different from genuine Chanel products, Defendant is violating Chanel's rights. Accordingly, Chanel asserts claims for federal trademark counterfeiting and infringement under 15 U.S.C. § 1114 and false designation of origin under 15 U.S.C. §1125(a).  Plaintiff seeks, *inter alia*, injunctive relief preventing Defendant from continuing Defendant's illegal counterfeiting operation on its Social Media Account, TikTok account, Instagram account, Subject Domain Name, and the Seller Platform; an accounting and an award of Defendant's profits flowing from Defendant's unlawful activities, which amount should be trebled; statutory damages of up to $2,000,000.00 per counterfeit mark per type of goods; prejudgment interest; attorneys' fees and costs; and any other relief the Court deems just and proper.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

18.    Chanel is a premier manufacturer and seller of a wide variety of high-quality goods and is a recognized leader in the industry of high-quality products including handbags, earrings, necklaces, bracelets, scarves, hats, clothing, sunglasses, blankets, keychains, and shoes.  Chanel's products are renowned for

7

their high quality, are sold in its free-standing boutiques, and are authorized for sale in no less than one hundred retail locations throughout the United States, including within Georgia.  All of Chanel's high-quality products prominently feature Chanel's iconic CHANEL and CC Monogram trademarks.  Substantial quantities of high-quality products including handbags, earrings, necklaces, bracelets, scarves, hats, clothing, sunglasses, blankets, keychains, and shoes have been sold by Chanel under its famous marks.

19.     Chanel's products, such as its handbags, earrings, necklaces, bracelets, scarves, hats, clothing, sunglasses, blankets, keychains, and shoes, including the styles at issue in this dispute, are renowned for their high quality and are easily identified by consumers and distinguished by the Chanel Marks.

20.     As a leader in the field of luxury fashion and beauty products, Chanel ensures that all its products are marketed and sold in a manner that befits and enhances Chanel's reputation.  It is essential to the marketing of Chanel's goods that all such products appear in a uniform fashion and are displayed and sold in a manner that enhances the value of the product, and, furthermore, in a manner that reflects the hard-earned image and reputation of Chanel as the manufacturer and seller of high-end goods.  Indeed, Chanel goes to great lengths and expense to present its products in an appealing manner.  The total make-up of the Chanel high-quality products, including handbags, earrings, necklaces, bracelets, scarves, hats, clothing,

8

sunglasses, blankets, keychains, and shoes, is integral to consumer's experience of Chanel's products.

21.     Chanel maintains strict quality control over its products, throughout the entire process, from manufacturing to distribution to sale and post-sale customer care.

22.     Having expended so much time and expense perfecting its products, Chanel closely oversees the sales process to ensure that customers shopping for Chanel products experience those products the way they are meant to be experienced and get the products they believe they are purchasing.  Toward that end, Chanel authorizes only its own boutiques and those third-party retailers who are specifically approved by Chanel following a careful review process to sell its high-quality products including handbags, earrings, necklaces, bracelets, scarves, hats, clothing, sunglasses, blankets, keychains, and shoes.  The goal is to ensure a purchasing experience that matches the luxury image of the Chanel brand.

23.     Chanel undertakes considerable efforts to build and maintain its image for its high-quality products.  This is done through the materials used, the sales channels, the consumer experience at retailers and through advertising.  Chanel invests significant time, money, and effort to advertise and promote its high-quality products, including handbags, earrings, necklaces, bracelets, scarves, hats, clothing, sunglasses, blankets, keychains, and shoes, spending significant resources each year

on such efforts.

24.    Chanel is the owner of all rights, including common law rights, in and

to the following trademark and United States Federal Trademark Registrations:

| Trademark | Registration Number | Registration Date | Classes/Goods |
|---|---|---|---|
| CHANEL | 0,626,035 | May 1, 1956 | IC 018 - Women's Handbags |
| CHANEL | 0,902,190 | November 10, 1970 | IC 014 - Bracelets, Pins, and Earrings |
| CHANEL | 1,177,400 | November 10, 1981 | IC 025 - Hats, Shawls and Belts |
| ⓒⓒ | 1,241,264 | June 7, 1983 | IC 025 - Suits, Jackets, Skirts, Dresses, Pants, Blouses, Tunics, Sweaters, Cardigans, Tee-Shirts, Coats, Raincoats, Scarves, Shoes and Boots |
| CHANEL | 1,241,265 | June 7, 1983 | IC 025 - Suits, Jackets, Skirts, Dresses, Pants, Blouses, Tunics, Sweaters, Cardigans, Coats, Raincoats, Scarves, Shoes and Boots |
| ⅭⅭ | 1,314,511 | January 15, 1985 | IC 018 - Leather Goods-Namely, Handbags |
| CHANEL | 1,347,677 | July 9, 1985 | IC 018 - Leather Goods-Namely, Handbags |
| ⓒⓒ | 1,501,898 | August 30, 1988 | IC 006 - Keychains IC 014 - Costume Jewelry IC 025 - Blouses, Shoes, Belts, Scarves, Jackets, Men's Ties IC 026 - Brooches and Buttons for Clothing |

| CHANEL | 1,733,051 | November 17, 1992 | IC 018 - Leather Goods; namely, Handbags, Wallets, Travel Bags, Luggage, Business and Credit Card Cases, Change Purses, Tote Bags, Cosmetic Bags Sold Empty, and Garment Bags for Travel |
|---|---|---|---|
| ☍ | 1,734,822 | November 24, 1992 | IC 018 - Leather Goods; namely, Handbags, Wallets, Travel Bags, Luggage, Business Card Cases, Change Purses, Tote Bags, and Cosmetic Bags Sold Empty |
| J12 | 2,559,772 | April 9, 2002 | IC 014 - Timepieces; namely, Watches, and Parts Thereof |
| RUE CAMBON | 2,964,843 | July 5, 2005 | IC 018 - Handbags |
| ☍ | 3,025,936 | December 13, 2005 | IC 009 - Eyeglass Frames, Sunglasses<br>IC 025 - Gloves, Swimwear<br>IC 026 - Hair Accessories, namely, Barrettes |
| CHANEL | 3,133,139 | August 22, 2006 | IC 014 - Jewelry and Watches |
| CHANEL | 3,134,695 | August 29, 2006 | IC 009 - Eyeglass Frames, Sunglasses, Sunglass Parts, Cases For Spectacles and Sunglasses<br>IC 025 - Swimwear, Stockings<br>IC 026 - Hair Accessories, Namely, Barrettes<br>IC 028 - Bags Specially Adopted For Sports Equipment, Tennis Rackets, Tennis Balls, Tennis Racket Covers |
| N°5 | 3,149,203 | September 26, 2006 | IC 014 - Jewelry |

| | | | |
|---|---|---|---|
| CHANEL | 3,890,159 | December 14, 2010 | IC 009 - Cases for Telephones<br>IC 018 - Key Cases |
| ⊂Ⓒ | 4,074,269 | December 20, 2011 | IC 009 - Protective Covers for Portable Electronic Devices, Handheld Digital Devices, Personal Computers and Cell Phones<br>IC 018 - Key Cases |
| ⊂Ⓒ | 4,241,822 | November 13, 2012 | IC 025 - For Clothing, namely, Coats, Jackets, Dresses, Tops, Blouses, Sweaters, Cardigans, Skirts, Vests, Pants, Jeans, Belts, Swim Wear, Pareos, Hats, Scarves, Ties, Gloves, Footwear, Hosiery |
| CHANEL | 5,100,448 | December 13, 2016 | IC 020 - Pillows |
| CHANEL | 5,166,441 | March 21, 2017 | IC 024 - Travelling blankets |
| ⊂Ⓒ | 5,280,486 | September 5, 2017 | IC 020 - Pillows |
| ⊂Ⓒ | 5,912,273 | November 19, 2019 | IC 018 - Handbags |

which are registered in International Classes 14, 18, and 25, and are used in connection with the manufacture and distribution of, among other things, high-quality products including handbags, earrings, necklaces, bracelets, scarves, hats, clothing, sunglasses, blankets, keychains, and shoes.  In addition, all the Chanel Marks—with the exception of Trademark Registration 5,912,273, which was registered in 2019—are incontestable pursuant to 15 U.S.C. § 1065 and serve as

conclusive evidence of Plaintiff's ownership of the Chanel Marks, and of its exclusive right to use the marks in commerce on or in connection with all of the goods identified in the registrations as provided by 15 U.S.C. §1115(b).

25.    The Chanel Marks have been used in interstate commerce to identify and distinguish Chanel's high-quality products including handbags, earrings, necklaces, bracelets, scarves, hats, clothing, sunglasses, blankets, keychains, shoes, and other goods for an extended period prior to Defendant's wrongful adoption and use of counterfeits of the marks.

26.    The Chanel Marks have never been assigned or licensed to the Defendant in this matter.

27.    The Chanel Marks are a symbol of Chanel's quality, reputation, and goodwill and have never been abandoned.

28.    Chanel has extensively used, advertised, and promoted the Chanel Marks in the United States in association with the sale of high-quality products including handbags, earrings, necklaces, bracelets, scarves, hats, clothing, sunglasses, blankets, keychains, shoes, and other goods and has carefully monitored and policed the use of the Chanel Marks.

29.    As a result of Chanel's efforts, members of the consuming public readily identify merchandise bearing the Chanel Marks, as being high quality merchandise sponsored and approved by Chanel.

30.     Accordingly, the Chanel Marks have achieved secondary meaning as identifiers of high-quality products, including handbags, earrings, necklaces, bracelets, scarves, hats, clothing, sunglasses, blankets, keychains, shoes, and other goods.

31.     At all times relevant hereto, the Defendant in this action had full knowledge of Chanel's ownership of the Chanel Marks, including its exclusive right to use and license such intellectual property and the goodwill associated therewith.

32.     Chanel has discovered the Defendant is promoting and otherwise advertising, distributing, selling and/or offering for sale counterfeit, infringing products bearing trademarks that are exact copies of the Chanel Marks (the "Defendant's Goods").  Defendant is using the Chanel Marks in the same stylized fashion, for different quality goods.

33.     The Defendant's Goods are of a quality substantially different than that of Chanel's genuine goods.  Despite the nature of Defendant's Goods and the knowledge that Defendant is without authority to do so, Defendant is using, promoting and otherwise advertising, distributing, selling and/or offering for sale counterfeit products through its Social Media Account and Instagram account with the knowledge that such goods will be mistaken for the genuine, high-quality products offered for sale by Chanel.  Defendant's actions result in the confusion of

consumers who will believe the Defendant's Goods are genuine goods originating from, approved, endorsed, and guaranteed by Chanel.

34.    Defendant advertises its products for sale to the consuming public.  In advertising its products, the Defendant uses the Chanel Marks.  Defendant's misappropriation of Chanel's advertising ideas in the form of the Chanel Marks has occurred, in part, in the course of Defendant's advertising activities and has been a proximate cause of damage to Chanel.

35.    Defendant is conducting its counterfeiting and infringing activities at least within this District.  As a result, the Defendant is defrauding Chanel and the consuming public for the Defendant's own benefit.  Defendant's infringement and disparagement of Chanel does not simply amount to the wrong description of its goods or the failure of the goods to conform to the advertised quality or performance.

36.    The Defendant's use of the Chanel Marks, including the promotion and advertising, reproduction, distribution, sale, and offering for sale of the Defendant's Goods, is without Chanel's consent or authorization.

37.    Further, the Defendant is engaging in the above-described counterfeiting and infringing activities knowingly and intentionally or with reckless disregard or willful blindness to Chanel's rights for the purpose of trading on the goodwill and reputation of Chanel.  If the Defendant's intentional unlawful activities are not enjoined by this Court, Chanel and the consuming public will continue to be

damaged and irreparably harmed.

38.    The Defendant's above identified infringing activities are likely to cause confusion, deception, and mistake in the minds of consumers, the public, and the trade.  Moreover, the Defendant's wrongful conduct is likely to create a false impression and deceive customers, the public, and the trade into believing there is a connection or association between Chanel's genuine goods and the Defendant's Goods.

39.    Chanel has no adequate remedy at law.

40.    Defendant is earning substantial profits, and Chanel is suffering irreparable injury as a result of the Defendant's counterfeiting and infringing activities.

41.    The harm sustained by Chanel has been directly and proximately caused by the Defendant's wrongful reproduction, use, advertisement, promotion, offers to sell, and sale of the Defendant's Goods.

**COUNT I - FEDERAL TRADEMARK COUNTERFEITING AND INFRINGEMENT PURSUANT TO § 32 OF THE LANHAM ACT**

42.    Chanel hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 41 above.

43.    This is an action for trademark counterfeiting and infringement against the Defendant based on Defendant's use of counterfeit and confusingly similar imitations of the Chanel Marks in commerce in connection with the promotion,

advertisement, distribution, offering for sale, and/or sale of goods bearing counterfeits of the Chanel Marks.

44.    Specifically, Defendant is promoting and otherwise advertising, selling, offering for sale and distributing products including handbags, scarves, hats, and clothing bearing counterfeits and/or infringements of the Chanel Marks.  In so doing, Defendant is continuously infringing and inducing others to infringe the Chanel Marks by using them to advertise, promote, offer to sell, and/or sell counterfeit and infringing versions of Plaintiff's branded goods.

45.    Defendant's counterfeiting and infringing activities are likely to cause confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendant's Goods.

46.    Defendant's unlawful actions have caused and are continuing to cause unquantifiable and irreparable harm to Chanel and are unjustly enriching Defendant with profits at Plaintiff's expense.

47.    Defendant's above-described actions constitute counterfeiting and infringement of the Chanel Marks in violation of Chanel's rights under § 32 of the Lanham Act, 15 U.S.C. § 1114.

48.    Plaintiff has no adequate remedy at law. Chanel has sustained injury caused by Defendant's conduct, and absent an entry of an injunction by this Court,

Chanel will continue to suffer irreparable injury to its goodwill and business reputation and Defendant will continue to wrongfully profit from its actions.

## COUNT II - FALSE DESIGNATION OF ORIGIN PURSUANT TO § 43(a) OF THE LANHAM ACT

49.     Chanel hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 41 above.

50.     The Defendant's Goods bearing and sold under the Chanel Marks have been advertised and distributed at least within this district.

51.     The Defendant's Goods bearing and sold under the Chanel Marks are different in quality from genuine Chanel goods.  Accordingly, the Defendant's activities are likely to cause confusion among the consuming public as to at least the origin or sponsorship of the Defendant's Goods.

52.     The Defendant has used in connection with its sale of Defendant's Goods, false designations of origins and false descriptions and representations, including words or other symbols which tend to falsely describe or represent such goods and has caused such goods to enter into commerce with full knowledge of the falsity of such designations of origin and such descriptions and representations, all to the detriment of Chanel.

53.     Specifically, the Defendant has used the Chanel Marks, in the Defendant's advertisement and promotion of its products including handbags, scarves, hats, and clothing. The Defendant has misrepresented to members of the

consuming public that the Defendant's Goods being advertised and sold by Defendant are genuine, non-infringing products.

54.     The Defendant's above-described actions are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

55.     Chanel has sustained injury caused by Defendant's conduct, and absent an entry of an injunction by this Court, Chanel will continue to suffer irreparable injury to its goodwill and business reputation and Defendant will continue to wrongfully profit from Defendant's actions.

## **PRAYER FOR RELIEF**

56.     WHEREFORE, Chanel demands judgment against the Defendant as follows:

a.  Entry of a permanent injunction enjoining Defendant, its agents, representatives, servants, employees, and all those acting in concert or participation therewith, from manufacturing or causing to be manufactured, importing, advertising or promoting, distributing, selling or offering to sell the Defendant's Goods; from infringing, counterfeiting, or diluting or tarnishing the Chanel Marks; from using the Chanel Marks, or any mark or trade dress similar thereto, in connection with the sale of any unauthorized goods; from using any logo, trade name or trademark or trade dress which may be calculated to falsely advertise the services or products of the Defendant as

being sponsored by, authorized by, endorsed by, or in any way associated with Chanel; from falsely representing themselves as being connected with Chanel, through sponsorship or association, or engaging in any act which is likely to falsely cause members of the trade and/or of the purchasing public to believe any goods or services of the Defendant are in any way endorsed by, approved by, and/or associated with Chanel; from using any reproduction, counterfeit, copy, or colorable imitation of the Chanel Marks in connection with the publicity, promotion, sale, or advertising of any goods sold by the Defendant, including, without limitation, products including handbags, scarves, hats, clothing, and other goods; from affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent Defendant's goods as being those of Chanel, or in any way endorsed by Chanel and from offering such goods in commerce; and from otherwise unfairly competing with Chanel.

b. Entry of an Order requiring Defendant to identify (i) the location of its counterfeit goods and (ii) the counterfeit goods in its inventory, possession, custody, or control bearing one or more of the Chanel Marks.

c. Entry of an Order requiring Defendant to surrender to Chanel the counterfeit goods in its inventory, possession, custody, or control bearing one or more of the Chanel Marks.

d. Entry of an Order requiring Defendant to account to and pay Chanel for all profits resulting from Defendant's unfair competition, trademark infringement, and counterfeiting  activities and that the award to Chanel be trebled, as provided for under 15 U.S.C. § 1117, or, at Chanel's election with respect to Count I, that Chanel be awarded statutory damages from Defendant in the amount of two million dollars ($2,000,000.00) per counterfeit Chanel Marks used and product sold, as provided by 15 U.S.C. § 1117(c)(2) of the Lanham Act.

e. Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, that, upon Chanel's request, those acting in concert or participation as service providers to Defendant cease hosting, facilitating access to, or providing any supporting services to Defendant in connection with any and all domain names, websites, and social media accounts, including but not limited to the Subject Domain Name, Social Media Account, TikTok account, and Instagram account, through which Defendant engages in the promotion, offering for sale and/or sale of goods using counterfeits and/or infringements of the Chanel Marks.

f.  Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority that, upon Chanel's request, any Internet marketplace website operators, administrators, registrar, and/or top level domain (TLD) Registry for the Subject Domain Name who is provided with notice of an injunction issued by the Court identify any email address known to be associated with Defendant's Subject Domain Name.

g.  Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, authorizing Chanel to serve the injunction on any e-mail service provider with a request that the service provider permanently suspend the e-mail address used by Defendant in connection with Defendant's promotion, offering for sale, and/or sale of goods using counterfeits, and/or infringements of the Chanel Marks.

h.  Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act and the Court's inherent authority, that upon Chanel's request, the top level domain (TLD) Registry for the Subject Domain Name, and any other domains used by Defendant, or Defendant's administrators, including backend registry operators or administrators, place the Subject Domain Name on Registry Hold status for the remainder of the registration period for such domain name, thus removing it from the TLD zone files which link the Subject Domain Name, and any other domain names being used and/or controlled by Defendant to

engage in the business of marketing, offering to sell, and/or selling goods bearing counterfeits and infringements of the Chanel Marks, to the IP address where the associated website is hosted.

i.  Entry of an Order that, upon Chanel's request, Facebook.com, TikTok.com, Instagram.com, and any other online service provider delete all videos and images posted by the Defendant in support of its counterfeiting activities and preclude the Defendant from posting new, similar videos and images.

j.  Entry of an order requiring, upon Chanel's request, Defendant to request in writing permanent termination of any messaging services, seller platforms, usernames, and social media accounts it owns, operates, or controls on any messaging service, e-commerce marketplace, and social media website.

k.  Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, canceling for the life of the current registration or, at Chanel's election, transferring the Subject Domain Name, any other domain names, and any e-commerce store or platform names used by Defendant to engage in its counterfeiting of the Chanel Marks at issue to Chanel's control so they may no longer be used for unlawful purposes.

l.  Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act and the Court's inherent authority, authorizing Chanel to request any Internet search engines or service provider referring or linking users to any URL of the

Subject Domain Name, which are provided with notice of the order, to permanently disable, de-index or delist all URLs of the Subject Domain Name and/or permanently disable the references or links to all URLs of the Subject Domain Name used by Defendant to promote, offer for sale, and/or sell goods bearing counterfeits and/or infringements of the Chanel Marks, based upon Defendant's unlawful activities being conducted via the Subject Domain Name as a whole and via any specific URLs identified by Chanel.

m. Entry of an Order requiring Defendant, at Chanel's request, to pay the cost necessary to correct any erroneous impression the consuming public may have received or derived concerning the nature, characteristics, or qualities of Defendant's products, including without limitation, the placement of corrective advertising and providing written notice to the public.

n. Entry of an order awarding Chanel pre-judgment interest on its judgment.

o. Entry of an order pursuant to 15 U.S.C. §1117(a) and (b) awarding Chanel its costs and reasonable attorneys' fees and investigators' fees associated with bringing this action.

p. Entry of an order awarding Chanel such other and further relief as the Court may deem just and proper.

24

DATED: February 1, 2024.

**COHEN, POLLOCK, MERLIN, TURNER, P.C.**

   /s/ Bruce Z. Walker

Bruce Z. Walker
GA Bar No. 731260
3350 Riverwood Pkwy., #1600
Atlanta, GA 30339
Telephone: (770)-857-4762
BWalker@cpmtlaw.com


Stephen Michael Gaffigan
Stephen M. Gaffigan, P.A.
(*pro hac vice* application to be filed)
401 East Las Olas Blvd., #130-453
Ft. Lauderdale, FL 33301
Telephone: (954) 767-4819
E-mail: Stephen@smgpa.cloud

*Counsel for Plaintiff Chanel, Inc.*